**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

JO-ANNE FILIPKOWSKI, individually, and on
behalf of all others similarly situated,

              Plaintiff,

v.

BETHPAGE FEDERAL CREDIT UNION and
DOES 1 through 100,

              Defendants.

-------------------------------------------------------------X

No. 2:20-cv-01754-JS-AKT

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT
BETHPAGE FEDERAL CREDIT
UNION'S MOTION TO COMPEL
ARBITRATION [Dkt. Nos. 11, 12 &
13]**

1

# TABLE OF CONTENTS

**PAGE**

I.   STATEMENT OF THE CASE ........................................................................4

II.  STATEMENT OF FACTS.............................................................................7

III. ARGUMENT.................................................................................................9

    A.   As A Threshold Matter, This Court Must Determine Whether The Parties Agreed To Arbitrate.........................................................................9

    B.   Bethpage Has Not Met Its Burden To Show That Plaintiff And Members Of The Class Received Actual Notice Or Inquiry Notice Of The Arbitration Amendment To The 2017 Account Agreement ..................................................11

    C.   Bethpage Has Not Demonstrated That The Arbitration Amendment To The 2017 Account Agreement Was Supported By Separate And Additional Consideration...........................................................................................22

IV.  CONCLUSION ...........................................................................................23

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Accardo v. Equifax, Inc.,*
  No. CV 18-5030 (JS) (AKT), 2019 WL 5695947 (E.D.N.Y. Aug. 9, 2019) ......................6, 10

*Bensadoun v. Jobe-Riat,*
  316 F.3d 171 (2d Cir. 2003) .............................................................................10

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,*
  346 F.3d 360 (2d Cir. 2003) .............................................................................10

*Coleman v. Alaska USA Fed. Credit Union,*
  No. 3:19-cv-0229-HRH, 2020 WL 110742 (D. Alas. Jan. 9, 2020) ........................23

*Deutsche Bank Secs., Inc. v. Rhodes,*
  578 F. Supp. 2d 652 (S.D.N.Y. 2008) ................................................................22

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995)........................................10

*Fletcher v. Standard Fire Ins. Co.,*
  80 F. Supp. 3d 386 (E.D.N.Y. 2015) .................................................................13

*Frankel v. Citicorp Ins. Svcs., Inc.,*
  80 A.D.3d 280, 913 N.Y.S.2d 254 (App. Div. 2010)......................................15, 16

*Himber v. Live Nation Worldwide, Inc.,*
  No. 16-CV-5001 (JS) (GRB), 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ..........11

*In re Worldcom, Inc.,*
  No. 02-13533 AJG, 2005 WL 3875192 (Bankr. S.D.N.Y. Oct. 27, 2005) ..............16

*Kearney v. Kearney,*
  42 Misc. 3d 360, 979 N.Y.S.2d 226 (Sup. Ct. 2013) ...........................................15

*Kelly v. Community Bank, N.A.,*
  No. 8:19-CV-919 (MAD/CFH), 2020 WL 777463 (N.D.N.Y. Feb. 18, 2020).........5

*Lismore v. Societe Generale Energy Corp.,*
  No. 11-CV-06705, 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012) ..........................6

*Lussoro v. Ocean Fin. Fed. Credit Union,*
  No. 18-CV-7400 (PKC)(ST) (E.D.N.Y. Apr. 22, 2020) ........................................5

*McNeil v. Capital One Bank, N.A.,*
  No. 1:19-cv-00473-FB-RER (E.D.N.Y.)...............................................................5

*Meckel v. Continental Resources Co.,*
  758 F.2d 811 (2d Cir. 1985) ............................................................................15

*Meyer v. Uber Techs., Inc.,*
  868 F.3d 66 (2d Cir. 2017) .........................................................................10, 17

#11552124.2

**PAGE**

*Mohammed v. Great Atl. & Pac. Tea Co.,*
No. 13 CIV. 2248, 2014 WL 4058708 (S.D.N.Y. Aug. 15, 2014) ,
*aff'd,* 607 Fed. Appx. 77 (2d Cir. 2015).............................................................16, 17

*Moss v. BMO Harris Bank, N.A.,*
24 F. Supp. 3d 281 (E.D.N.Y. 2014).........................................................................6

*Perks v. TD Bank, N.A.,*
No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020)................5

*Russell v. Mimeo, Inc.,*
No. 08-CV-5354, 2008 WL 6559743 (S.D.N.Y. Oct. 29, 2008) .............................11

*Schnabel v. Trilegiant Corp.,*
697 F.3d 110 (2d Cir. 2012) ...........................................................................passim

*Scotti v. Tough Mudder Inc.,*
63 Misc. 3d 843, 97 N.Y.S.3d 825 (Sup. Ct. 2019) ...........................................11, 21

*Shron v. LendingClub Corp.,*
No. 19 Civ. 6718 (AT), 2020 WL 3960249 (S.D.N.Y. July 13, 2020) ............passim

*Story v. SEFCU,*
No. 1:18-CV-764 (MAD/DJS), 2019 WL 2369878 (N.D.N.Y. June 5, 2019) ..........5

*Stralia Maritime S.A. v. Praxis Energy Agents DMCC,*
431 F. Supp. 3d 366 (S.D.N.Y. 2019) .....................................................................22

*Teamsters Local 456 v. AMEC Commercial, LLC,*
No. 18-CV-854 (CS), 2019 WL 3429594 (S.D.N.Y. July 30, 2019) ...............10, 11

*U.S. v. Aegerion Pharmaceuticals, Inc.,*
280 F. Supp. 3d 217 (D. Mass. 2017).......................................................................23

*Valle v. ATM Nat'l, LLC,*
No. 14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ...............17, 19

*Velez v. Credit One Bank,*
No. 15-CV-4752 (PKC), 2016 WL 324963 (E.D.N.Y. Jan. 25, 2016) ...................18

*Zambrana v. Pressler and Pressler, LLP,*
No. 16-CV-2907 (VEC), Dkt. No. 81-3 ...............................................................15, 21

**Rules**

Local Civil Rule 56....................................................................................................12

Local Civil Rule 56.1(a) ..........................................................................................10

**Other Authorities**

Consumer Financial Protection Bureau, *Arbitration Study Report to Congress, Pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act* (Mar. 2015) .........................23

Plaintiff, Jo-Anne Filipkowski, by her undersigned counsel and on behalf of herself and all others similarly situated, files her Response in Opposition to the Motion to Compel Arbitration filed by Defendant, Bethpage Federal Credit Union ("Bethpage").  Dkt. Nos. 11, 12 & 13.  For the reasons set forth herein, Plaintiff respectfully submits that this Court should deny Defendant's motion in its entirety.[1]

## I.    STATEMENT OF THE CASE

Plaintiff commenced this action by filing her Class Action Complaint on April 9, 2020. Dkt. No. 1.  Plaintiff alleges that Bethpage wrongfully charged her and members of the proposed Class fees related to their checking accounts.  Specifically, Plaintiff alleges that Bethpage breaches its members' contracts and violates federal and state laws so as to maximize the Defendant's fee income by (a) assessing an overdraft fee or insufficient funds fee ("NSF") on transactions when there was enough money in the checking account to cover (pay for) the transactions presented for payment; (b) imposing more than one NSF fee, or an NSF fee followed by an overdraft fee, on the same electronic item or check; (c) charging fees that were neither disclosed nor authorized by the Account Contract or Fee Schedule; (d) enrolling its members into its "Courtesy Pay" program pertaining to those fees in violation of Regulation E including, but not limited to, offering other services beyond the coverage of ATM and non-recurring debit card transactions and by not describing the overdraft fee service in which it actually engages; (e) violating its own Funds Availability Policy in a manner that increased fees that were imposed on its members; and (f) charging its members for transferring money from their savings account(s) to their checking account(s) when there was no negative balance to avoid in the checking account(s).  Plaintiff alleges that the charging of such fees breaches

---

[1]      In support of this Response, Plaintiff submits (a) the Declaration of Jo-Anne Filipkowski ("Filipkowski Decl."); (b) the Declaration of Kevin P. Roddy ("Roddy Decl.") with Exhibits A-G; and (c) Objections to the Declaration of Linda Siblano.

Bethpage's contracts with its members – including the members of the Class – and also violates federal law. Dkt. No. 1, ¶¶ 1-4; *see also id.,* ¶¶ 15-75. Based upon her well-pled allegations, the Plaintiff asserts claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment/restitution; (4) money had and received; (5) violations of the federal Electronic Fund Transfers Act (Regulation E); (6) violations of New York General Business Law § 349; and (7) negligence. *Id.,* ¶¶ 89-119. In her Complaint, Plaintiff describes the Class(es) that she proposes to certify under Rule 23. *Id.,* ¶ 77; *see also* Roddy Decl., ¶ 2.

This case is similar to other pending class actions in which New York consumers challenge their bank's or credit union's policy and practice of charging them overdraft and/or NSF fees, and wherein courts have ruled on motions to dismiss. *See, e.g., Lussoro v. Ocean Fin. Fed. Credit Union,* No. 18-CV-7400 (PKC)(ST) (E.D.N.Y. Apr. 22, 2020); *Perks v. TD Bank, N.A.,* No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020); *Kelly v. Community Bank, N.A.,* No. 8:19-CV-919 (MAD/CFH), 2020 WL 777463 (N.D.N.Y. Feb. 18, 2020); *Story v. SEFCU,* No. 1:18-CV-764 (MAD/DJS), 2019 WL 2369878 (N.D.N.Y. June 5, 2019); *see also McNeil v. Capital One Bank, N.A.,* No. 1:19-cv-00473-FB-RER (E.D.N.Y.) (defendant's motion to dismiss pending).

Rather than filing an Answer or a Motion to Dismiss the Complaint, by letter to this Court dated May 5, 2020, Bethpage sought leave of this Court to file a motion to compel arbitration of Plaintiff's claims under the Federal Arbitration Act ("FAA"). Dkt. No. 8. On the following day, this Court entered an Electronic Order granting Bethpage leave to file the above-referenced motion; Defendant filed the instant motion on June 5, 2020. Dkt. Nos. 11, 12 & 13.

In the meantime, however, on May 22, 2020, Plaintiff served on the Defendant her First

Set of Requests for Production of Documents (the "Requests").  Roddy Decl., ¶ 3 & **Exhibit A**.

In her eighteen (18) Requests, the Plaintiff sought information as to issues presented by

Bethpage's motion to compel arbitration, including whether an agreement to arbitrate exists

between the Plaintiff and the Defendant, as determined by state contract law.  Dkt. No. 8 at 1-2;

*see also* Roddy Decl., ¶ 3 & **Exhibit A**, Requests 1-18.  On or about June 22, 2020, Bethpage

served its initial written Response to the Requests (the "Response") in which it refused on

various grounds to produce *any* of the documents or other information sought by the Plaintiff.

Roddy Decl., ¶ 4 & **Exhibit B**.  After receiving and reviewing the Response, counsel for the

Plaintiff immediately sent an e-mail message to counsel for the Defendant, requesting that the

parties schedule and conduct a telephonic meet-and-confer.  Roddy Decl., ¶ 4 & **Exhibit C**.

The meet-and-confer between opposing counsel was held on the morning of June 23,

2020.  Counsel discussed and compared Bethpage's asserted refusal to permit pre-arbitration

discovery with the Plaintiff's asserted right, under Second Circuit and district court authority, to

conduct such discovery before responding to the motion to compel arbitration.[2]  Counsel

discussed in detail each of the 18 Requests; in some instances, counsel for the Defendant agreed

to provide information sought by the Plaintiff; in other instances, counsel for Bethpage stood on

his client's objection(s) and refused to provide any information to the Plaintiff.  Roddy Decl., ¶

5.

During this telephonic meet-and-confer, counsel also discussed the Declaration of Linda

---

[2]     Ignoring law in this Circuit, Bethpage asserted in the Response that it was not required to respond to the Requests because pre-arbitration discovery is not permitted.  Roddy Decl., **Exhibit B** at 2 (citing a case from the Southern District of Mississippi).  But, as this Court has recognized, "[i]n a typical motion to compel arbitration … some discovery may be allowable or necessary." *Accardo v. Equifax, Inc.,* No. CV 18-5030 (JS) (AKT), 2019 WL 5695947, *6 (E.D.N.Y. Aug. 9, 2019) (quoting *Moss v. BMO Harris Bank, N.A.,* 24 F. Supp. 3d 281, 285 (E.D.N.Y. 2014), and *Lismore v. Societe Generale Energy Corp.,* No. 11-CV-06705, 2012 WL 3577833, *1 (S.D.N.Y. Aug. 17, 2012)).

Siblano ("Siblano"), Bethpage's Assistant Vice President and Compliance Officer, which had been filed in support of the Defendant's motion to compel arbitration. Dkt. No. 12. In anticipation of the meet-and-confer, Plaintiff's counsel had prepared and submitted to Bethpage's counsel draft deposition notices, both for Defendant's Rule 30(b)(6) designee(s) and for Ms. Siblano individually. During the teleconference, Bethpage's counsel represented that Ms. Siblano would be the Defendant's sole designee to be deposed and agreed to make her available on a mutually agreeable date and in a mutually agreeable location. Roddy Decl., ¶ 6.

At the conclusion of the June 23, 2020, telephonic meet-and-confer, Bethpage's counsel stated that the Defendant would prepare and serve a supplemental Response to the Requests, and represented that Bethpage would produce Ms. Siblano for deposition. Roddy Decl., ¶ 6. On July 3, 2020, Bethpage served its Supplemental Response(s) to Plaintiff's Requests. Roddy Decl., ¶ 7 & **Exhibit D**. At the same time, Bethpage produced 98 pages of documents in response to the Requests. *Id.*, ¶ 7 & **Exhibit E** (copies of documents bearing Bates numbers BETH 00001-00098).[3] Thereafter, on July 14, 2020, Plaintiff's counsel conducted a remote deposition of Ms. Siblano. Roddy Decl., ¶ 8, and **Exhibit F** (Siblano Deposition transcript). During that deposition (but not before), counsel for Bethpage produced a one-page document that was described as an e-mail message that had been sent, on an undisclosed date, to its members who had elected to receive notice electronically. Roddy Decl., ¶ 8, and **Exhibit G**. *See* discussion *infra.*

## II.    STATEMENT OF FACTS

Plaintiff is a resident of North Babylon, New York. Since February 2008, she has been a member of Bethpage, a Long Island-based federal credit union. Dkt. No. 1, ¶ 5; Dkt. No. 13 at 4;

---

[3]     Apparently none of Defendant's responsive documents were withheld from discovery on grounds of "privilege." In any event, Bethpage has not produced any "privilege log" to Plaintiff or her counsel.

Roddy Decl. Ex. E, at BETH 0071-72 & BETH 0092-93 (Membership Account Signature Card). The relationship between Bethpage and its members (including Plaintiff and the members of the Class) is governed by a sequence of written documents entitled, at various times, the "Membership Account Information" (effective Sept. 1, 2014) (the "2014 Account Agreement"), Roddy Decl., **Exhibit E** at BETH 00010-32; and the "Consumer Member Account Agreement" (effective Oct. 20, 2017) (the "2017 Account Agreement"), Roddy Decl., **Exhibit E** at BETH 0034-57.[4]  Neither the 2014 Account Agreement nor the 2017 Account Agreement produced by Bethpage contained an arbitration clause or provision.  *See id.*; *see also* Roddy Decl., **Exhibit F** at 60-61 & 62-64.  Although the agreements state that their terms and conditions "may be amended from time to time" (2014 Account Agreement at 2) or "change[d]" (2017 Account Agreement at 9), they do not specify the procedure for amendment.

In Fall 2019, Bethpage sought to amend the 2017 Account Agreement by adding, for the first time, an arbitration clause to its terms and conditions.  Roddy Decl., **Exhibit E**, at BETH 0002-3 (two-page "Arbitration and Waiver of Class Action"); *see also* Dkt. No. 13 at 2-4 (describing terms and conditions of arbitration clause).  There is no evidence in the record as to *why* Bethpage sought to impose an arbitration clause upon its members.  Nor is there any evidence that Bethpage offered its members any consideration for the Fall 2019 amendment to the then-existing 2017 Account Agreement.  As to the significance of this fact, which goes unaddressed in the moving papers, *see* pages 22-23, *infra*.

In the pending motion, Bethpage claims that it provided proper notice of the arbitration

---

[4]    In its Response to Plaintiff's Requests, Bethpage represents that an earlier "Membership Agreement" was in effect when Plaintiff opened her account in 2008; however, Defendant has been unable to produce it in discovery.  Roddy Decl., **Exhibit D** at 4.  For purposes of the pending motion, Plaintiff submits that it may be assumed that that 2008 "Membership Agreement" did not contain an arbitration clause.

amendment to its members by regular mail (for those members who had chosen to receive notice(s) in that manner) or electronically (for those who had chosen that manner of notice), and that any member who failed to opt-out of the arbitration amendment are bound thereby.  Dkt. No. 13 at 4-6.  In Fall 2019, Bethpage had approximately 408,000 members.  According to Ms. Siblano's testimony, approximately 78% of its members (about 320,000 consumers) had elected to receive regular mail notice, while the remaining 22% (about 88,000 consumers) had elected electronic notice.  Roddy Decl., **Exhibit F** at 36-37.  Bethpage claims that Plaintiff received proper written notice of the arbitration amendment because it was enclosed along with two other unrelated inserts (a fee schedule and a privacy notice) in a #10 envelope containing her September 2019 account statement, which was purportedly mailed to her during the first week of October 2019, and that she failed to opt-out of the amendment.  Dkt. No. 13 at 5-6.  However, Plaintiff never received this supposed insert concerning an arbitration agreement.  Filipkowski Decl., ¶ 2.  As described in more detail below, the documents produced by Bethpage evidence that the inserts did not finish printing until October 10, 2019, and, therefore, by definition could not have been included with the September 2019 account statement as contended.  Finally, Bethpage concedes that only 209 of its members – just 0.0005% of approximately 408,000 members – opted out of the proposed arbitration amendment, and cannot say whether a single one was from the group which it contends supposedly received an insert in late September or early October 2019.  Roddy Decl., **Exhibit F** at 98:25-99:3.

## III.    ARGUMENT

## A.    As A Threshold Matter, This Court Must Determine Whether The Parties Agreed To Arbitrate

This Court recognizes that before compelling arbitration, it "must first determine two threshold issues that are governed by state rather than federal law:  (1) Did the parties enter into a

contractually valid arbitration agreement? And (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Accardo*, 2019 WL 5695947, at *6 (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003)).  Arbitration is a matter of contract and a party cannot be compelled to submit to arbitration any matter that party has not agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995). Whether a valid agreement exists to submit certain issues to binding arbitration "is determined by state law principles governing the formation of contracts." *Shron v. LendingClub Corp.,* No. 19 Civ. 6718 (AT), 2020 WL 3960249, *1 (S.D.N.Y. July 13, 2020) (citation omitted). Bethpage agrees that this is the threshold issue to be decided by this Court, and the parties agree that New York law applies to their contractual relationship in this case.  Dkt. No. 13 at 7.

Under the FAA, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (quoting 9 U.S.C. § 4); *see also Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003).  Because an arbitrator "has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate," the question of whether such an agreement exists and is effective "is necessarily for the court and not the arbitrator." *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 118 (2d Cir. 2012) (citations omitted).  In this Circuit, "[c]ourts deciding motions to compel [arbitration] apply a standard similar to that applicable for a motion for summary judgment," so "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Teamsters Local 456 v. AMEC Commercial, LLC,* No. 18-CV-854 (CS), 2019 WL 3429594, *1 (S.D.N.Y. July 30, 2019) (quoting *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 74 (2d Cir. 2017)); *see also Shron,* 2020 WL 3960249, at *2.[5]

---

[5]      Bethpage's moving papers do not comply with the requirements of Local Civil Rule

Here, this Court "must determine whether there is an issue of fact as to the making of the agreement for arbitration." *Teamsters Local 456*, 2019 WL 3429594, at \*4 (citation omitted); *see also Shron*, 2020 WL 3960249, at \*2 ("The parties dispute whether an agreement to arbitrate exists … As a threshold matter, therefore, the Court must determine whether the parties entered into the Arbitration Agreement[].")  On the instant motion, all inferences must be drawn in Plaintiff's favor. *Id.*; *see also Russell v. Mimeo, Inc.*, No. 08-CV-5354, 2008 WL 6559743, \*1 (S.D.N.Y. Oct. 29, 2008) (where a motion to compel arbitration is opposed on the ground that the parties did not agree to arbitrate, the court "should give the opposing party the benefit of all reasonable doubts and inferences that may arise").  The party seeking to compel arbitration – Bethpage – bears the burden of showing that a valid arbitration agreement exists. *Teamsters Local 456*, 2019 WL 3429594, at \*4; *Russell*, 2008 WL 6559743, at \*1; *see also Shron*, 2020 WL 3960249, at \*3 ("Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists by a preponderance of the evidence.") (citations omitted); *Scotti v. Tough Mudder Inc.*, 63 Misc. 3d 843, 97 N.Y.S.3d 825, 831 (Sup. Ct. 2019) (same).  As set forth below, Plaintiff asserts that Defendant has not satisfied its burden of proof on this threshold issue.

**B.  Bethpage Has Not Met Its Burden To Show That Plaintiff And Members Of The Class Received Actual Notice Or Inquiry Notice Of The Arbitration Amendment To The 2017 Account Agreement**

Under New York law, in order to create a binding contract, there must be a meeting of the minds.  "This is because an enforceable contract requires mutual assent to essential terms and conditions thereof." *Shron*, 2020 WL 3960249, at \*3 (citation omitted); *see also Himber v. Live Nation Worldwide, Inc.*, No. 16-CV-5001 (JS) (GRB), 2018 WL 2304770, \*3 (E.D.N.Y. May 21,

---

56.1(a); however, as Judge Seibel observes, a motion to compel arbitration is not strictly "a motion for summary judgment, and a Local [Civil] Rule 56.1 statement is not required." *Teamsters Local 456*, 2019 WL 3429594, at \*1 n.2.

2018) ("To form a contract, there must be mutual manifestation of assent by the parties, whether by words or conduct, sufficient to assure that they are truly in agreement with respect to all material terms.") (citations omitted).

Contrary to its assertion, Dkt. No. 13 at 8-9, Bethpage has not met its burden to show that in or about October 2019, the Plaintiff received notice of and is thus bound by the proposed arbitration amendment to the 2017 Account Agreement. It is "well settled law" that notice of an offer to contract must be provided to an offeree before acceptance can be valid. *Zambrana,* 2016 WL 7046820, at *4 (citing New York cases). Here, there is no evidence in the record that the Plaintiff was on *actual notice* of the arbitration amendment to the 2017 Account Agreement. *See Schnabel,* 697 F.3d at 120 (distinguishing between consumer plaintiff's "*actual* notice" and her "*inquiry* notice" of arbitration provision); *Shron,* 2020 WL 3960249, at *4 ("Because … Defendant does not provide any evidence *that Plaintiff actually saw or read* those [arbitration] provisions, the Court concludes that *Plaintiff did not receive actual notice.*") (emphasis added; citing *Schnabel*).

Bethpage does not distinguish between the Plaintiff's supposed "actual notice" or her "inquiry notice" of the arbitration amendment in September 2019; rather, Defendant asserts that she received "*reasonable* notice of the terms of the [amendment]," without defining what that term means. Dkt. No. 13 at 8 (emphasis added). Citing to the Siblano Declaration (Dkt. No. 12, ¶¶ 3 & 5), Defendant asserts that "*Bethpage* mailed" the proposed arbitration amendment to its members in the first week of October 2019. Dkt. No. 13 at 8 (emphasis added). But, as Siblano's deposition testimony makes clear, she lacks the requisite "first-hand knowledge" of whether the proposed arbitration amendment *was* sent to the Plaintiff in October 2019. Roddy

Decl., **Exhibit F** at 11-12, 20, 29-32, 40-42, 46-47 & 72-73.[6]  Plaintiff testifies she did not

receive any insert regarding binding arbitration as claimed.  Filipkowski Decl., ¶ 2.  Further, had

she known that continued use of her account with Bethpage after September 2019 somehow

meant agreement to a binding arbitration clause, she would not have continued to use her

account.  *Id.*  Moreover, even the limited documents produced in discovery by Defendant reflect

it is not possible for the arbitration amendment/insert to have been mailed the first week of

October 2019, as Ms. Siblano testifies in Paragraph 5 of her Declaration they supposedly were.

This document (Roddy Decl., **Exhibit E** at BETH 0058)  indicates the printing job was not even

completed until October _**10**_, 2019:

## MAILING PROFILE FORM

**Customer Name:** Bethpage Federal Credit Union
**Application Code:** BPC      **Application Description:** Member Statements
**Begin Production Date:** Oct 1, 2019
**End Production Date:** Oct 10, 2019

| Insert ID Number | Description | Insert Selection Criteria | Run Quantity | Disposition | Shortage | Purchase Order # |
|---|---|---|---|---|---|---|
| 255264 | MT848 - Consumer Member Privacy Notice | S1 | 380,000 | D | C | |
| 255266 | MT849 - Arbitration Agreement | S2 | 400,000 | D | C | |
| 255267 | MK289 - Fee Schedule | S3 | 400,000 | D | C | |
| | | | | | | |

Another internal Bethpage memo (Roddy Decl., **Exhibit E** at BETH 0069) indicates the new

Arbitration Clause and Fee Schedule should have been received by Bethpage's branch locations on

September 23 and was dated 09/2019:

---

[6]      Rule 56 requires a party moving for summary judgment to submit supporting affidavits or declarations based on "personal knowledge."  *See Fletcher v. Standard Fire Ins. Co.,* 80 F. Supp. 3d 386, 394 (E.D.N.Y. 2015).

#11552124.2

**Very Important Action Items:**

Branches should have received copies of the revised Fee Schedule, revised Privacy Notice and the new Arbitration Agreement the week of September 23.

Effective **Tuesday, October 1, 2019:**

- The old fee schedule and privacy notice must be replaced in the Consumer Membership Account Agreement with the revised Fee Schedule dated 09/2019, Consumer Privacy notice, and new Arbitration Agreement.

But what was produced in discovery is actually something different:  a document dated

**10**/2019 (Roddy Decl., **Exhibit E** at BETH 0087 & 0090), rather than 09/2019 as stated in the

memo:[7]

MT-849  Rev. 10/2019                                                                                          255266

BETH00090

We submit that this case is similar to *Zambrana,* wherein Judge Caproni in the Southern

District of New York found that the defendant credit card company failed to meet its burden to

show that the consumer plaintiff received notice of a revised agreement containing an arbitration

provision.  In *Zambrana,* the district court rejected the declaration submitted by the credit card

company's in-house attorney and compliance officer who, like Ms. Siblano in the present case,

lacked first-hand knowledge:

> Defendants have submitted a declaration from Eric Gribbin in an attempt to demonstrate that HSBC mailed the 2010 Agreement to all Best Buy cardholders, including Plaintiff.  During the relevant time period, Gribbin was responsible for the Best Buy credit card portfolio as Senior Legal Counsel for HSBC's Credit Card and Retail Services law department; Gribbin states that the Notice, which he helped develop, was sent to all HSBC Best Buy cardholders, that Plaintiff was a cardholder at the time, and that the Notice "would have been" mailed to her at the address on file.  Gribbin Decl. ¶¶ 2, 5, 7.  Because, however, Gribbin does not purport to have first-hand knowledge of whether the 2010 Agreement was sent to Plaintiff and does not describe a standard office mailing procedure, Defendants have no evidence that the 2010 Agreement was sent to Plaintiff or that she

---

[7]      Further, the exemplar envelope produced in discovery, Roddy Decl., **Exhibit E** at BETH 0084, is dated February 2016, more than three years before the supposed mailing occurred.

#11552124.2

otherwise received the 2010 Agreement.

2016 WL 7046820, at *4 (citing, *inter alia, Frankel v. Citicorp Ins. Svcs., Inc.,* 80 A.D.3d 280,

913 N.Y.S.2d 254, 258 (App. Div. 2010) (holding that an "affidavit of the senior vice-president

… was insufficient to demonstrate personal knowledge of actual mailing … [H]er claims that

Citibank 'caused to be mailed' the arbitration change-in-terms and that Citibank's records

'reflected' that the 2002 credit card agreement had been mailed to the plaintiff were conclusory

and otherwise insufficient to establish 'office practice' geared so as to ensure the likelihood that

[the documents] were always properly addressed and mailed[.]") (citations omitted)).  Thus, Ms.

Siblano's assertion that the arbitration amendment "would have been mailed" to the Plaintiff, *see*

Dkt. No. 12 at 2, suffers from the same infirmity as compliance officer Gribbin's declaration in

*Zambrana.*[8]

Citing *Kearney v. Kearney,* 42 Misc. 3d 360, 979 N.Y.S.2d 226, 233 (Sup. Ct. 2013),

Bethpage claims that under New York law, "there is a presumption" that the proposed arbitration

amendment "reached its destination" – namely, the mailbox(es) of Plaintiff and the members of

the Class.  Dkt. No. 13 at 8.  But, as *Kearney* makes clear, "the New York courts have stated that

in order to raise the presumption, more than a general mailing affidavit is required.  The

presumption of receipt may be created by either proof of actual mailing or proof of a standard

office practice or procedure designed to ensure that items are properly addressed or mailed."  979

N.Y.S.2d at 233 (citations omitted).  *See also Meckel v. Continental Resources Co.,* 758 F.2d

811, 817 (2d Cir. 1985) (a rebuttable presumption that an addressee received a mailed notice

---

[8]        *See Zambrana v. Pressler and Pressler, LLP,* No. 16-CV-2907 (VEC), Dkt. No. 81-3,
Declaration of Eric J. Gribbin in Support of Reply Memorandum in Support of Motion to
Compel Arbitration (filed Sept. 8, 2016), and Dkt. No. 87, Plaintiff's Sur-Reply in Opposition to
Defendants' Motion to Compel Arbitration (filed Sept. 28, 2016) (challenging Gribbin's
declaration).

#11552124.2

arises when the mailing party submits sufficient evidence to demonstrate that the notice was properly addressed and mailed). In this case, Ms. Siblano's assertions are "conclusory and otherwise insufficient" to establish Bethpage's "office practice" under well-settled New York law. *Frankel,* 913 N.Y.S.2d at 257 (collecting relevant New York cases).

As Ms. Siblano conceded at her deposition, she *did not supervise* the mailing that supposedly took place in October 2019; nor did she have any first-hand knowledge of that mailing. "Evidence of actual mailing, in the form of an affidavit submitted by an individual who *supervised* the mailing is sufficient to allow the presumption to arise." *In re Worldcom, Inc.,* No. 02-13533 AJG, 2005 WL 3875192, *3 (Bankr. S.D.N.Y. Oct. 27, 2005) (emphasis added). *Accord Mohammed v. Great Atl. & Pac. Tea Co.,* No. 13 CIV. 2248, 2014 WL 4058708, *4 (S.D.N.Y. Aug. 15, 2014) , *aff'd,* 607 Fed. Appx. 77 (2d Cir. 2015).

Ms. Siblano not only admits that she had no personal knowledge of the mailing nor its supervision, but she also admits that none of the notices she purports to authenticate in her Declaration as relating to Plaintiff were actually attached to or a part of Plaintiff's file. Roddy Decl., **Exhibit F** at 31:16-23. Notably, she was not copied on any of the Bethpage internal e-mail messages related to the mailing, *id.* at 69:1-4 & 86:2-11; she did not know what the various "bins" or other terms referenced by the vendors were, *id.* at 83:21-84:2, 95:5-13 & 100:1-5; she did not know about any members' calls to the 800-number set up to reach Bethpage "call center," *id.* at 48:22-49:1 & 49:21-50:2; she did not know whether any of the member opt-outs were the result of the supposed mailing or electronic notice, *id.* at 98:25-99:4; does not know how many mailings were returned as being undeliverable to members, *id.* at 93:24-94:2; and, of course, she did not write her own declaration submitted to this Court.[9]

---

[9]    The evidence submitted by Bethpage (Ms. Siblano's declaration) may be compared and

Plaintiff asserts that she was not on *actual* notice of the arbitration amendment, and Bethpage cannot point to any evidence in the record upon which a jury could rely to conclude otherwise. Further, Plaintiff makes clear that had she received this arbitration amendment insert, she would have remembered. Filipkowski Decl., ¶ 2.

The question that must be addressed, then, is whether Plaintiff and the members of the Class were on *inquiry* notice of the arbitration amendment through the written notice(s) and/or the electronic notice(s) that it claims were disseminated. *See Schnabel,* 697 F.3d at 120; *Shron,* 2020 WL 3960249, at \*4-5 (where there is no evidence that the offeree had actual knowledge of the terms of the agreement, the court must examine whether a reasonably prudent user would be on inquiry notice of the terms). Whether a reasonably prudent member would be on inquiry notice turns on the "clarity and conspicuousness" of the arbitration amendment. *Id.* at \*4 (citing *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 74-75 (2d Cir. 2017)). "On a motion to compel arbitration, a court looks to whether 'the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *Shron,* 2020 WL 3960249, at \*5 (quoting *Meyer,* 868 F.3d at 76).

---

contrasted to that found sufficient by Judge Griesa in *Mohammed*:

> In support of its motion to dismiss the complaint, defendant has submitted documentary evidence demonstrating that it mailed Notice of the Effective Date to plaintiff. Defendant included the affidavit of Melissa Loomis, an employee of Kurtzman Carson Consultants LLC, the claims and noticing agent for defendant debtors. Loomis details that *under her direction and supervision*, Kurtzman employees served plaintiff with the Notice of the Effective Date via first class mail. Accordingly, defendant has established a rebuttable presumption that plaintiff received the mailing in question.

2014 WL 4058708, at \*4 (emphasis added; footnote and record citation omitted). To the same effect is Judge Forrest's decision in *Valle v. ATM Nat'l, LLC,* No. 14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015), where the defendant submitted the sworn declaration of the vendor that actually carried out the mailing(s) to the bank's customers. *Id.* at \*5. In this case, Bethpage did not submit any declaration(s) from its vendor(s).

Even accepting what Defendant says,, the September 2019 monthly account statement that was mailed to Plaintiff (and those members of the Class who had elected to receive notices via regular mail delivered by the U.S. Postal Service) was accompanied by *several* inserts: (1) a Consumer Member Privacy Notice, (2) a Fee Schedule, and (3) the arbitration amendment. Even if one were to disregard the evidence of Ms. Siblano's complete lack of personal knowledge that these ever actually were mailed, and if one were also to ignore the self-contradicting dates on the limited documents produced, which demonstrate that it was impossible for the supposed inserts to have been dated 09/2019 as the internal memoranda stated they were or to be enclosed with the September 2019 account statement, each of these four (4) documents was folded in one-thirds and placed in a single #10 envelope, and the account statement itself was a multi-page document. Roddy Decl., **Exhibit F** at 88:12-89:14. Bethpage concedes that the exterior of the envelope – what the member would see upon removing it from his or her mailbox – contained no mention whatsoever of the arbitration amendment supposedly contained therein. Rather, Bethpage relies on the "notice" regarding the arbitration amendment that it says appeared above the front fold of the monthly account statement that was *inside* the envelope, asserting that "[e]ven if [Plaintiff] had just opened the envelope and peeked inside, she would have easily seen the notice." Dkt. No. 13 at 8.[10]  But, given the Defendant's failure to maintain and produce in discovery a single replica of the envelope and its contents that were supposedly mailed to approximately 320,000 members who elected to receive notice by regular mail and, instead, producing a "sample" envelope from three years earlier with a date of February 2016 on it,

---

[10]     Bethpage does not assert that this "notice" regarding the arbitration amendment placed in the top right-hand corner of the monthly account statement "highlight[ed]" the arbitration amendment, as was the case in *Velez v. Credit One Bank,* No. 15-CV-4752 (PKC), 2016 WL 324963, *3 (E.D.N.Y. Jan. 25, 2016), also cited by Defendant, *see* Dkt. No. 13 at 8.

Roddy Decl., **Exhibit E** at BETH 0084, this is an unsupported assumption that should bear no weight in this Court.[11]

Plaintiff contends that a question of disputed fact is created by Ms. Filipkowsi not having received the insert, and her testimony that she would have remembered it had she actually received it. Plaintiff contends a further question of disputed fact is created by Ms. Siblano's lack of personal knowledge about any aspect of this process, and the contradictory dates on the inserts and memoranda making it impossible for the documents to have gone out with the September 2019 statement as claimed. Plaintiff also contends that yet a further question of disputed fact is created by Bethpage's unexplained decision to apparently "bury" the arbitration amendment by enclosing it with several other written notices in the mailing containing the multi-page September 2019 account statement. This case stands in contrast to *Valle,* a decision from the Southern District of New York that Bethpage cites (Dkt. No. 13 at 8 & 9), in which the bank sent its account holders a cover letter and an amended agreement containing an arbitration provision. 2016 WL 413449, at *1. In response to plaintiffs' proposed class action challenging the bank's fees and surcharges, the bank moved to compel arbitration. Finding that there was mutual assent to the amended agreement and the arbitration provision, Judge Forrest emphasized that the bank's communication to its customers concerned *only* the arbitration provision:

> Here, BPNA sent the Amended Agreement and an explanatory one-page cover letter to its customers on January 17, 2014. That letter *highlighted* that the Amended Agreement would supersede any previous agreement and specifically pointed out the new Arbitration Provision.

*Id.* at *3 (emphasis added). Judge Forrest emphasized that the bank did not "bury[] the arbitration provision in an unexpected email"; rather, it "*highlighted* the arbitration provision on

---

[11] Ms. Siblano testified that she kept a sample of the envelope and inserts Bethpage claims was mailed to members in October 2017, but she was unable to produce it. Roddy Decl., **Exhibit F** at 25-26 & 96-97.

#11552124.2

the first page of the Agreement and in the [one-page cover] letter." *Id.* (emphasis added).

Whether, in this case, Bethpage's written communication(s) to the approximately 320,000

members who had elected to receive notice(s) by regular mail even actually included the insert

about the arbitration amendment, yet alone "highlighted" the arbitration amendment or instead

"bur[ied]" it in a #10 envelope containing three other folded-up inserts presents a factual dispute

on a significant threshold issue that cannot be resolved as a matter of law.

Further, neither Bethpage nor its designee, Ms. Siblano, address how notice of the

arbitration agreement was provided to the approximately 88,000 members (about 22% of the

total number of members) who had elected to receive notice electronically.  Dkt. Nos. 12 & 13.

But documents produced by Defendant, *see* Roddy Decl., **Exhibit E**, and the Siblano Deposition,

*see id.*, **Exhibits F & G**, allow this Court to analyze its sufficiency.  On some unknown date,

Bethpage members who elected to receive notice electronically purportedly received the

following e-mail message:

> Your monthly statement is available for viewing.
>
> Dear Valued Member,
>
> Your monthly statement is ready to view.  Simply log into your Bethpage Online
> Banking account and view it securely by clicking the eStatements/Notice.
>
> View Your Statement Now
>
> Important Notices are included with this September statement.  These notices
> have been posted in Online Banking.  To view these notices, please [click on? –
> text is unclear] eStatements, then Newsletters and Announcements.  For any
> questions, please contact us at 800-628-7070.

Roddy Decl., **Exhibit G**.  Significantly, nothing in this e-mail message alerts the member to the

"legal significance" of the arbitration amendment, as required by the relevant case law.  *See, e.g.,*

*Shron,* 2020 WL 3960249, at *5.

Bethpage has produced what it represents are screenshots of its "eStatements/Notices." The second page (or screen) directs the member to the "Newsletter and Announcements" section. Roddy Decl., **Exhibit E** at BETH 0060-61.  The second page (or screen) informs the member:

> Important notices are included with this September statement.  These notices have been posted in the "Newsletters and Announcements" section below.
>
> 1. Consumer Member Privacy Notice 2. Fee Schedule 3. Arbitration Agreement
>
> Please review this important information, and contact us at 800-628-7070 if you have any questions.

*Id.* at BETH 00061.  Once again, this language does not alert the member to the "legal significance" of the arbitration amendment.

The member must then navigate through multiple pages (or screens) by clicking on "Privacy Policy & Disclosures, *see id.* at BETH 0073-74, before eventually arriving at a page (or screen) with a very small-font heading ("Disclosures") heading a column of **_20_** small-font "hyperlinks"; the **_last_** one listed is "Arbitration and Waiver of Class Action."  *Id.* at BETH 0075. Again, none of these steps alert the member to the "legal significance" of the arbitration amendment.  As the Second Circuit recognized in *Schnabel,* 697 F.3d at 121-30, as seconded by Judge Torres in *Shron,* 2020 WL 3960249, at *4-6, Bethpage's members who elected to receive notice electronically were never put on inquiry notice of the arbitration amendment to the 2017 Account Agreement.  *See also Scotti,* 97 N.Y.S.3d at 834 (organizer of "Tough Mudder" fitness-related obstacle course competition failed to establish that participants had inquiry notice of arbitration clause in online agreement; "terms should not be enforced when they are buried at the bottom of a webpage or tucked away in obscure corners") (internal quotation marks deleted).

To paraphrase Judge Caproni's analysis of this issue in *Zambrana,* if Bethpage never mailed the arbitration amendment to Plaintiff, there is no agreement to supersede the 2017

-21-

Account Agreement, and Plaintiff continues to be bound by its terms.  Similarly, if Bethpage

mailed the arbitration amendment but Plaintiff never received it and thus did not consent to it

because she did not have notice, the parties continue to be bound by the 2017 Account

Agreement because it was never superseded.  *See Zambrana,* 2016 WL 7046820, at *4; *see also*

*Coleman,* 2020 WL 110742, at *5 ("And, if the arbitration provision never became part of the

Account Agreement, then defendant's motion to compel arbitration must be denied.").  In either

case, there are material issues of disputed fact that preclude this Court from granting the instant

motion.

**C.      Bethpage Has Not Demonstrated That The Arbitration Amendment To The 2017 Account Agreement Was Supported By Separate And Additional Consideration**

There is an additional issue that must be considered.  As the Second Circuit has observed,

in this case Bethpage, in "attempting to use the amendment model, may be required to clear an

additional hurdle:  the requirement … that the amendment to a contract be supported by separate

and additional consideration."  *Schnabel,* 697 F.3d at 123 n.13 (citing Second Circuit case

applying Connecticut law).  Additional consideration is required as evidence that the parties

have, in fact, bargained for and agreed upon what is essentially a new contract. *Id.*  Under New

York law, while consideration is required for a contract to be valid,[12] a modification to a contract

need not be supported by additional consideration *if* the modification is "in writing and signed by

the party against whom it is sought to enforce the change [or] modification…."  *Stralia Maritime*

*S.A. v. Praxis Energy Agents DMCC,* 431 F. Supp. 3d 366, 371 (S.D.N.Y. 2019) (quoting N.Y.

Gen. Oblig. Law § 5-1103).  Although the arbitration amendment to the 2014 Account

Agreement was "in writing," it was not "signed by" the Plaintiff – nor is there any proof in the

record that it was "signed by" *any* of the approximately 408,000 Bethpage members (many of

---

[12]      "Under New York law, consideration is required for a contract to be valid."  *Deutsche Bank Secs., Inc. v. Rhodes,* 578 F. Supp. 2d 652, 660 (S.D.N.Y. 2008) (citations omitted).

whom are believed to be Class members).  Although Defendant's moving papers are silent on

this issue, this point is particularly significant where, as here, the addition of a mandatory

arbitration provision, which included a class action waiver, would certainly be considered an

unfavorable change to Plaintiff and other Bethpage members who are members of the Class.[13]

Plaintiff testifies she did not intend for her continued use of the account to in any way indicate

agreement to a binding arbitration clause, particularly one of which she was not even aware.

Filipkowski Decl.,¶ 2.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's Motion to Compel Arbitration (Dkt. Nos.

11, 12 & 13) should be denied in its entirety.

DATED:  August 6, 2020

WILENTZ, GOLDMAN & SPITZER, P.A.

By___*Kevin P. Roddy*_____
     KEVIN P. RODDY – NYSBA # 652585
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
E-mail:  kroddy@wilentz.com

Taras Kick – CA Bar # 143379
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA  90049
Telephone:  (310) 395-2988
E-mail:  taras@kicklawfirm.com
(Admitted *Pro Hac Vice*)

**Attorneys for Plaintiff and Proposed Class**

---

[13]    In *Coleman v. Alaska USA Fed. Credit Union,* No. 3:19-cv-0229-HRH, 2020 WL 110742
(D. Alas. Jan. 9, 2020), Judge Holland denied the credit union's motion to compel arbitration in a
class action challenging overdraft and NSF fees.  The court noted the existence of "a thorough
government study" that "confirms how effective is compulsory consumer arbitration in stifling
consumer claims altogether." *Id.* at *4 (citing *U.S. v. Aegerion Pharmaceuticals, Inc.,* 280 F.
Supp. 3d 217, 226 n.7 (D. Mass. 2017) (citing Consumer Financial Protection Bureau,
*Arbitration Study Report to Congress, Pursuant to Dodd-Frank Wall Street Reform and
Consumer Protection Act* (Mar. 2015)).

#11552124.2

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2020, I caused to be electronically filed the foregoing Response in Opposition to Defendant Bethpage Federal Credit Union's Motion to Compel Arbitration with the Clerk of the Eastern District of New York using the Nextgen system, which sent notification of such filing to all counsel of record.

DATED:  August 6, 2020

WILENTZ, GOLDMAN & SPITZER, P.A.

By:    *Kevin P. Roddy*
      KEVIN P. RODDY

Attorney for Plaintiff and Proposed Class

#11552124.2