```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
JO-ANNE FILIPKOWSKI, individually,
and on behalf of others similarly situated,

                     Plaintiff,
                                             MEMORANDUM & ORDER
          -against-                          20-CV-1754(JS)(AKT)

BETHPAGE FEDERAL CREDIT UNION and
DOES 1-100,

                     Defendants.
-----------------------------------------X
APPEARANCES
For Plaintiff:      Kevin P. Roddy, Esq.
                    Wilentz, Goldman & Spitzer, P.A.
                    90 Woodbridge Center Drive, Suite 900
                    Woodbridge, New Jersey 07095

                    Taras Kick, Esq., pro hac vice
                    The Kick Law Firm, APC
                    815 Moraga Drive
                    Los Angeles, California 90049

For Defendant
Bethpage Federal
Credit Union:       Craig Andrew Convissar, Esq.
                    Katten Muchin Rosenman LLP
                    575 Madison Avenue
                    New York, New York 10022

                    Stuart M. Richter, Esq., pro hac vice
                    Katten Muchin Rosenman LLP
                    2029 Century Park East
                    Los Angeles, California 90067
```

SEYBERT, District Judge:

Plaintiff Jo-Anne Filipkowski ("Plaintiff"), individually, and on behalf of others similarly situated, commenced this proposed class action against Defendant Bethpage Federal Credit Union ("Defendant" or "Bethpage") alleging that

Defendant wrongfully charged Plaintiff, and members of the proposed class, fees related to their checking accounts. (Compl., ECF No. 1.)  Before the Court is Defendant's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and an agreement between the parties. (Mot., ECF No. 11; Def. Br., ECF No. 13; Def. Reply, ECF No. 20.) Plaintiff opposes the motion.  (Pl. Opp., ECF No. 19.)  For the reasons that follow, Defendant's motion to compel arbitration is GRANTED and this matter is STAYED.

BACKGROUND

I.  Consideration of Declarations and Evidence Submitted in Reply

As a preliminary matter, the Court considers the declarations and evidence submitted by Defendant in reply. (See Pl. Ltr., ECF No. 25; Def. Ltr. Opp., ECF No. 26.) "[N]otwithstanding the traditional rule that it is improper for a party to submit evidence in reply that was available when it filed its motion," the Court exercises its discretion and finds it "entirely appropriate to consider" the reply declarations that directly respond to evidence proffered in Plaintiff's opposition -- namely, the argument that Defendant failed to establish that it mailed an arbitration agreement to Plaintiff with her account statement, discussed infra.  Yorke v. TSE Grp. LLC, No. 18-CV-5268, 2019 WL 3219384, at *2 (S.D.N.Y. July 17, 2019) (collecting cases for the proposition that evidence may be considered in reply

when it is responsive to claims raised in opposition briefs); Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir. 2005) (noting that district courts have discretion to consider or disregard arguments and evidence raised for the first time in a reply brief); Lucina v. Carnival PLC, No. 17-CV-6849, 2019 WL 1317471, at *4 n.1 (E.D.N.Y. Mar. 22, 2019) (declining to strike affidavits and evidence submitted in reply "because they respond to material questions raised in" an affirmation in opposition to a motion to compel arbitration).

Moreover, there is little prejudice to Plaintiff where, as here, she could have, but did not, claim "surprise . . . and sought leave to file a responsive sur-reply." Ruggiero, 424 F.3d at 252; Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 227 (2d Cir. 2000) (finding the district court properly accepted evidence submitted in reply where, among other things, the opposing party knew the evidence could refute its argument but "chose not to introduce any evidence" of its own and did not seek leave to file a sur-reply to respond to the new evidence). Accordingly, the facts are drawn from the Complaint, the declarations, and exhibits submitted in connection with the Motion, including Plaintiff's opposition and Defendant's reply.[1]

---

[1] See Compl.; the declaration of Linda Siblano ("Siblano Decl."), ECF No. 12; the declaration of Jo-Anne Filipkowski ("Filipkowski Decl."), ECF No. 19-1; the declaration of Kevin P. Roddy ("Roddy Decl."), ECF No. 19-3; the declaration of Caitlin Dour ("Dour

3

II. <u>Plaintiff's Member Account with Bethpage</u>

Plaintiff is a member of Defendant, a federally chartered credit union. (Compl. ¶¶ 5-6.) Defendant's relationship with its members is governed by various versions of a member account agreement (the "Member Agreement"). (Siblano Decl. ¶ 2.) As relevant here, Plaintiff and Defendant entered into a "Membership Account Information" contract, a version of the Member Agreement effective September 1, 2014 (the "2014 Agreement"). (Compl. ¶ 30; Siblano Decl. ¶ 10; 2014 Agmt., Siblano Decl., Ex. C, ECF No. 12-3.) The 2014 Agreement provides, among other things, that "you agree to be bound by the terms and conditions set forth in this [2014] Agreement, as the same may be amended from time to time." (2014 Agmt. at 1.) Plaintiff and Defendant also entered into a "Consumer Member Account Agreement," a version of the Member Agreement effective October 20, 2017 (the "2017 Agreement"). (Compl. ¶ 29; Siblano Decl. ¶ 10; 2017 Agmt., Siblano Decl., Ex. D, ECF No. 12-4.) The 2017 Agreement provides that if Defendant "notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s)." (2017 Agmt. at 9 (under "AMENDMENTS AND TERMINATION").) It further provides that

---

Decl."), ECF No. 22; the declaration of Brenda Smith ("Smith Decl."), ECF No. 23; and the supplemental declaration of Linda Siblano ("Suppl. Siblano Decl."), ECF No. 24.

4

"[w]ritten notice we give you is effective when it is deposited in the United States Mail with proper postage and addressed to your mailing address we have on file." (Id. (under "NOTICES").)

III. The October 2019 Arbitration Agreement

In October 2019, Defendant amended its Member Agreement to add an arbitration clause (the "Arbitration Agreement"). (Siblano Decl. ¶ 4; Arbitration Agmt., Siblano Decl., Ex. A, ECF No. 12-1; Siblano Dep., Roddy Decl., Ex. F, ECF No. 19-7, at 65:7-11.) Defendant represents that by October 7, 2019, it mailed members a copy of the Arbitration Agreement in the same envelope as the September 2019 account statements, among other documents. (Siblano Decl. ¶ 5; Smith Decl. ¶¶ 6, 9; USPS Mail Receipt, Smith Decl., Ex. 3, ECF No. 23-3.) For members who opted to receive monthly account statements and notices via regular mail, like Plaintiff,[2] Defendant outsourced the printing and mailing process to third-party vendors. Here, Defendant used Official Offset Corporation ("Official") to print the inserts that accompanied monthly account statements, such as the Arbitration Agreement, a privacy notice, and a fee schedule. (Siblano Dep. at 91:22-92:17; Official Oct. 10, 2019 Invoices, Roddy Decl., Ex. E, ECF No. 19-6, at ECF pp. 97 (privacy notice), 99 (Arbitration Agreement), 100

---

[2] Plaintiff elected to receive monthly account statements and notices via regular mail until April 2020, when she enrolled in electronic statements. (Siblano Decl. ¶¶ 3-4.)

5

(fee schedule).)  Once printed, Official provided those inserts to Taylor Communications ("Taylor"), another third-party vendor, for mailing.  (Smith Decl. ¶ 8.)  Specifically, Defendant used Taylor to (1) print the monthly account statements and (2) mail the statements along with additional notices and inserts it received from Official.  (Siblano Dep. at 66:20-67:2.)

Taylor's envelope stuffing process is automated such that Plaintiff's account statement contains an "intelligent mail barcode" ("IMB") above her name and address that reflects the number of sheets of paper used to print the statement and the number of inserts included in the mailing.  (Smith Decl. ¶¶ 13-14.)  The IMB on Plaintiff's account statement reads, among other things, "1-2 2.3."  (Id. ¶ 14; see Sept. 2019 Acct. Statement, Siblano Decl., Ex. B., ECF No. 12-2, at 1.)  "1-3" refers to the number of sheets of paper used to print the September 2019 statement and "2.3" refers to the inserts added to the mailing.  (Smith Decl. ¶ 14.)  The "2.3" corresponds to the fee schedule and the Arbitration Agreement, which are identified "as S2 and S3 in the 'Insert Selection Criteria' column on the Bethpage" mailing profile form submitted to Taylor.  (Id.; Mailing Profiling Form, Smith Decl., Ex. 2, ECF No. 23-2, at 1.)  Moreover, the top right corner of the September 2019 account statement reads:

6

> Attention: Important notices are included
> with this statement.
>
> 1. Consumer Member Privacy Notice
> 2. Fee Schedule
> 3. Arbitration Agreement

(Sept. 2019 Acct. Statement at 1.)

Following this procedure, Defendant maintains that it mailed Plaintiff's September 2019 account statement, along with a copy of the Arbitration Agreement, in the first week of October 2019. (Siblano Decl. ¶¶ 3-5.) Plaintiff counters that "to the best of [her] recollection," she "never received a binding arbitration agreement or pamphlet from [Defendant], neither enclosed with [her] September 2019 account statement nor otherwise." (Filipkowski Decl. ¶ 2.)

IV. <u>The Terms of the Arbitration Agreement</u>

The Arbitration Agreement provides that if informal settlement is not possible,

> [A]ny and all Claims that are threatened, made, filed or initiated after the Effective Date (defined below) of this Arbitration and Waiver of Class Action provision ("Arbitration Agreement"), even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date, shall, at the election of either you or us, be resolved by binding arbitration . . . .

(2019 Agmt. at 1). The Arbitration Agreement contains a "Class Action Waiver" providing that "ANY ARBITRATION OF A CLAIM WILL BE

7


ON AN INDIVIDUAL BASIS." (Id. at 2 ¶ 4.) The "Right to Opt-Out" provision states:

> You have the right to opt-out of this Arbitration Agreement and it will not affect any other terms and conditions of your Account Agreement or your relationship with the Credit Union. To opt out, you must notify the credit union in writing of your intent to do so within 30 days after the Effective Date. Your opt-out will not be effective and you will be deemed to have consented and agreed to the Arbitration Agreement unless your notice of intent to opt out is received by the credit union in writing . . . .

(Id. at 2 ¶ 6.) While 209 Bethpage members opted out of the Arbitration Agreement, Plaintiff did not. (Dour Decl. ¶ 2; Siblano Decl. ¶ 8.) Out of those 209 individuals, 177 members elected to receive statements and notices by mail. (Dour Decl. ¶ 2.)

## DISCUSSION

I. Legal Standard

The FAA, 9 U.S.C. §§ 1-16, "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). Section 2 of the FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When analyzing a motion to compel arbitration, the Court must consider: "(i) whether the parties agreed to arbitrate, and, if so, (ii) whether the scope of that agreement encompasses the claims at issue." Jampol v. Blink Holdings, Inc., No. 20-CV-2760, 2020 WL 7774400, at *4 (S.D.N.Y. Dec. 30, 2020) (citing Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 394 (2d Cir. 2015)). When resolving such a motion, courts apply "a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). In doing so, the court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." Jampol, 2020 WL 7774400, at *4 (quoting Meyer, 868 F.3d at 74).

II. Analysis

Plaintiff does not challenge the scope of the Arbitration Agreement. Nor does she dispute that she received the September 2019 account statement that, according to Defendant, contained the Arbitration Agreement. Rather, the sole issue is whether Defendant made a prima facie showing that the parties agreed to arbitrate the claims at issue, i.e., whether Defendant

9

established that it mailed the Arbitration Agreement to Plaintiff with the September 2019 account statement. Plaintiff contends an issue of fact exists because (1) the declaration of Linda Siblano "lacks the requisite 'first-hand knowledge'" of Defendant's "office practice" for mailing (Pl. Opp. at 12, 15-16); and (2) the Arbitration Agreement "did not finish printing until October 10, 2019, and, therefore, by definition could not have been included with the Setpember 2019 account statement as contended" (Pl. Opp. at 9, 11-12). In reply, Defendant submits additional declarations, discussed supra, and argues that the evidence demonstrates the Arbitration Agreement "was included with Plaintiff's September 2019 account statement," among other arguments. (Reply at 8.)

New York[3] recognizes "a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures." Manigault v. Macy's East, LLC, 318 F. App'x 6, 7 (2d Cir. 2009) (citing Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)). It is well-established that "'denial of receipt of the mailing' cannot by itself 'rebut the presumption' of receipt under New York law." Pelligrino v. Morgan Stanley Smith Barney LLC, No. 17-CV-7865, 2018 WL 2452768, at *3 (S.D.N.Y. May 31, 2018) (quoting Manigault, 318 F. App'x at 7) (subsequent citations omitted).

---

[3] The parties do not dispute the application of New York law.

Upon a review of the record as a whole -- including, as stated supra, the evidence submitted in reply -- Defendant has met its burden to show that it mailed the Arbitration Agreement "in accordance with regular office procedures." Manigault, 318 F. App'x at 7. First, Plaintiff states that "to the best of [her] recollection," she "never received a binding arbitration agreement or pamphlet from [Defendant], neither enclosed with [her] September 2019 account statement nor otherwise." (Filipkowski Decl. ¶ 2.) This alone persuades the Court in favor of granting the motion. Indeed, "'bare denials' are not sufficient to create a genuine dispute of material fact regarding the existence of an arbitration agreement," or to rebut the presumption of mailing. Bezek v. NBC Universal, No. 17-CV-1087, 2018 WL 2337131, at *10 (D. Conn. May 23, 2018) (collecting cases), aff'd, 770 F. App'x 599 (2d Cir. 2019); Manigault, 318 F. App'x at 7; see also Couch v. AT & T Servs., Inc., No. 13-CV-2004, 2014 WL 7424093, at *6 (E.D.N.Y. Dec. 31, 2014); Mancilla v. ABM Indus., Inc., No. 20-CV-1330, 2020 WL 4432122, at *7 (S.D.N.Y. July 29, 2020) (finding defendants established that plaintiff agreed to an arbitration agreement because the plaintiff's claim that she did "not recall seeing" the agreement was "insufficient to create a genuine issue of material fact as to whether the parties entered into an arbitration agreement.").

11

Second, the Court rejects Plaintiff's argument that the Siblano Declaration "lacks the requisite 'first-hand knowledge'" of Defendant's "office practice." (Pl. Opp. at 12, 15-16.) To the contrary, "[t]here is no requirement that the affiant either personally perform or oversee the mailing." Kernaghan v. Forster & Garbus, LLP, No. 18-CV-0204, 2019 WL 981640, at *4 (E.D.N.Y. Feb. 25, 2019). In any event, there is "compelling circumstantial evidence" that Defendant mailed the Arbitration Agreement with the September 2019 account statement. McCormick v. Citibank, NA, No. 15-CV-0046, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016); see Bakon v. Rushmore Serv. Ctr., LLC, No. 16-CV-6137, 2017 WL 2414639, at *2 (E.D.N.Y. June 2, 2017) ("[A]ctual receipt of an arbitration agreement need not be proven to enforce it" and "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." (second alteration in original) (internal quotation marks and citations omitted)).

Specifically, the Siblano Declaration, when read in conjunction with her deposition testimony, Plaintiff's documentary evidence, and the Smith Declaration, sufficiently establishes that the Arbitration Agreement was mailed to, and received by, Plaintiff at the same time the September 2019 account statement was mailed

12

to, and received by, Plaintiff.[4] (See Background, Part III, supra.) Indeed, here, Defendant "submitted testimony and documents with intelligent barcodes, addressed to Plaintiff, suggesting that these documents were in the system for processing. Plaintiff does not say that she never received these documents," but rather, "she simply states she does not remember one way or another." Edwards v. Macy's Inc., No. 14-CV-8616, 2015 WL 4104718, at *6 (S.D.N.Y. June 30, 2015); see also Jackson v. Rushmore Serv. Ctr., LLC, No. 18-CV-4587, 2019 WL 4736914, at *5 (E.D.N.Y. Sept. 27, 2019) (collecting cases). Under New York law, therefore, Defendant is entitled to the presumption of receipt. Plaintiff's arguments to the contrary do not overcome the presumption.

---

[4] A better practice may have been for Defendant to submit a single declaration detailing the manner in which it engages outside vendors to mail account statements and notices. Compare Jackson, 2019 WL 4736914, at *5 (finding a declaration "sufficiently demonstrated that the Card Agreement was mailed to plaintiff, and that plaintiff received it" where the declaration detailed the defendant's regular business practice "of directing its vendor to send, via first class mail by way of the United States Postal Service, a copy of the credit card agreement containing the terms and conditions . . . together with the credit card for that account") with Zambrana v. Pressler & Pressler, LLP, No. 16-CV-2907, 2016 WL 7046820, at *4 (S.D.N.Y. Dec. 2, 2016) (finding no evidence that defendant mailed arbitration agreement where defendant's employee declaration did "not purport to have first-hand knowledge of whether the [ ] Agreement was sent to Plaintiff and [did] not describe a standard office mailing procedure"). Nonetheless, here, the evidence before the Court sufficiently establishes that Defendant mailed the Arbitration Agreement to Plaintiff in accordance with its regular office procedure and with the September 2019 account statement.

Finally, the Court rejects Plaintiff's argument that the Arbitration Agreement constitutes a "new contract" or a "modification to a contract" that must be in writing and signed by Plaintiff or supported by "additional consideration." (Pl. Opp. at 22-23; see also id. at 22 (citing Stralia Maritime S.A. v. Praxis Energy Agents DMCC, 431 F. Supp. 3d 366, 371 (S.D.N.Y. 2019), for the proposition that a writing satisfying General Obligation Law § 5-1103 does not require additional consideration).) Putting aside Plaintiff's contradictory assertions that the Arbitration Agreement is a new contract and a contract modification, both the 2014 Agreement and the 2017 Agreement provide that Defendant may amend or change the terms and conditions governing the parties' relationship. (See 2014 Agmt. at 1; 2017 Agmt. at 9 (under "AMENDMENTS AND TERMINATION").) The Arbitration Agreement "was an exercise of" Defendant's right to amend its member agreements and is "therefore not void under the Statute of Frauds or N.Y. GOL section 5-1103 for want of consideration." In re Residential Capital, LLC, 531 B.R. 25, 48 (Bankr. S.D.N.Y. 2015); see id. at 47-48 (citing New York law).

Further, New York law provides that "mutual promises to arbitrate constitute[ ] consideration sufficient to support [an] arbitration agreement." Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc., No. 18-CV-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) (quoting Kopple v. Stonebrook Fund Mgmt., LLC, 794

14

N.Y.S.2d 648, 648 (N.Y. App. Div. 1st Dep't 2005)) (further citation omitted). Here, the Arbitration Agreement "includes such mutuality of obligation." Id. Indeed, it requires arbitration of "any and all Claims that are threatened, made, filed or initiated after the Effective Date," regardless of the party seeking to enforce arbitration. (Arbitration Agmt. at 1 ("Either you or we may elect to resolve a particular Claim through arbitration, even if one of us has already initiated litigation in court related to the Claim . . . ."); id. ("any and all Claims . . . shall, at the election of either you or us, be resolved by binding arbitration").) The Arbitration Agreement is thus supported by adequate consideration such that Plaintiff's signature is not required to enforce its terms. (Cf. Pl. Opp. at 22-23.)

Therefore, the Court finds that Defendant has established the first prong of the analysis on a motion to compel arbitration: the existence of a valid agreement to arbitrate and that Plaintiff did not opt out.[5] Plaintiff does not meaningfully dispute the second prong: whether the claims at issue fall within the scope of the Arbitration Agreement. See Butnick v. Experian Info. Sols., Inc., No. 20-CV-1631, 2021 WL 395808, at *10 (E.D.N.Y.

---

[5] In light of this conclusion, the Court does not consider the parties' remaining arguments except that it necessarily follows that "because the Arbitration Agreement is valid and enforceable, the class action waiver contained within the Agreement is also enforceable." Simeon v. Domino's Pizza LLC, No. 17-CV-5550, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019).

15

Feb. 4, 2021). Thus, the motion to compel arbitration on an individual basis is GRANTED.

## CONCLUSION

For the reasons stated, Defendant's motion to compel arbitration (ECF No. 11) is GRANTED. Defendant's request for a stay (see Mot.) is similarly GRANTED and this matter is STAYED pending the outcome of arbitration pursuant to 9 U.S.C. § 3. On or before October 1, 2021, the parties shall file a joint letter advising the Court as to the status of any arbitration.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  4 , 2021
       Central Islip, New York